Mr. Krueger Yes sir, good morning. May it please the court, can you hear me okay? Yes. Okay, thank you very much. May it please the court, I'm U.S. Attorney Matthew Krueger,        I have a request to speak to you today. Yes, I'm here. Dr. Krueger, there's a lot of trust in the government. It's not common, it's not frequent that the United States takes an interlocutory appeal before a criminal trial. But in this case, the district court's rulings prevent the government from being able to have a fair trial on the grand jury's indictment. The district court committed clear legal error in ruling that evidence of Mr. Hamzeh's motive, his reason for wanting to obtain machine guns, was not relevant. That contradicts this court's decisions and Schmidt, Siebold, and others, in which it's clear that in the government's case, evidence for why a defendant wanted to commit a crime is relevant. That legal error is all the more problematic because Hamzeh has put at issue an entrapment defense. Could you stop for a minute, because, you know, you argue that evidence of his Middle East plans was necessary to show his level of sophistication, but did you argue that below? And if you did, can you give an example of the details that would indicate sophisticated thinking as opposed to a rational bravado? Yes, Your Honor, that certainly was argued below. The government opposed Hamzeh's entrapment defense and in his entrapment defense, he put at issue his sophistication and his IQ. The reason why the government argues that that shows his sophistication is because Mr. Hamzeh displayed a detailed understanding of the situation in the Middle East. He explained why he wanted to go to Jordan, the benefits that came from him having an American passport. He demonstrated knowledge of the ways the Israeli army worked and the targets he would want to hit. And that's why the government proffered somewhat more extended discussion of his detailed planning. It also is critically important to entrapment because it shows that as early as October of 2015, he himself was leading and having the detailed discussions for why he wanted a machine gun, why he needed to be able to spray bullets. And that happened months before the actual solicitation for him to purchase a machine gun in this case. I think your honor's question demonstrates precisely why the error by the district judge is so stark, because entrapment puts at issue, as you see, even in the appellate brief here, questions of his sophistication, the timeline of his durability, the consistency with which he demonstrated a desire to have a machine gun. And it critically puts at issue the defense's argument of who is really the leader here. Let's stop you again. How have you demonstrated how motive is relevant to a claim of physical possession? Because it seemed to me that the possession cases that you relied on for your motive argument, all related to cases in which the government claimed constructive possession and motive was therefore relevant as part of the overall circumstances to link, you know, the defendant with the firearm. Now, how, however, is that relevant to a claim of actual physical possession as is case law seems to indicate that motive is irrelevant for such a charge. Your honor, I think the case law points the other way, cases like Schmidt and others, particularly because he is disputing even actual possession. You see this in the appellate brief and you see it below where the defense has claimed that there was a bait and switch here at trial. He is arguably going to claim that he wanted just a handgun or a different type of weapon, that he was just carrying a weapon for Steve, for someone else, and that there wasn't constructive possession. And so possession is that issue. Look, in Schmidt and also in the Lloyd case that you cited, motive was relevant because a showing of constructive possession required examination of all circumstances that tied the defendant to the weapon. In this case, it seems to me, you know, help me if I'm just wrong, that your case is based on his physical possession rather than that claim of constructive possession. He has argued in his appellate brief and below that he was actually carrying, but carrying a weapon for Steve, for someone else, and in that way appears to be denying that he possessed that weapon in a real way. But even setting that aside, the entrapment defense also makes the motive evidence very relevant because by permitting entrapment to go to the jury, the government has to show that he was predisposed to obtain this weapon, even apart from the government's solicitation. But if he just wanted to have a machine gun, where did this one come from that he was, we'll call it, caught with as he approached the car? The particular machine gun at issue was furnished by one of the government agents, but the government needs to show that he was predisposed to obtain an illegal machine gun and a machine gun that could spray bullets. Of course, there's no requirement that the government show that he knew it was illegal. But the point is, we have to show he was predisposed to obtain a machine gun. And then it's OK if the machine gun doesn't work or if it's, I don't know what this machine gun looked like, but that was the possession actually was when he was going to go put it in his car, I guess. I don't know, I'm sure nobody paid $25,000 for this machine gun, or am I wrong? Yeah, it was a sting operation, so the government has to prove that he possessed an illegal machine gun, so at trial, there'll be evidence that the machine gun that he possessed was illegal and the government's evidence will be that he paid money and then took possession of it. That will be shown at trial. But the motive evidence is important, and I don't know if this gets to your honor's question, but the motive evidence is particularly relevant to show that he wanted to possess that machine gun, one that could spray bullets. And that shows that it wasn't just something he was carrying to the car for Steve, just because Steve needed his car loading. It's something that he himself wanted. And how do we know that he wanted it? Because he had a plan, a plan that he expressed as early as October and again in November and December to spray bullets and attack people. Now, at trial, Mr. Hamza is going to argue that he only wanted a handgun and that this was a bait and switch, that he was only interested in self-defense. And the government needs to be able to meet those arguments by showing that actually he was the leader. Hamza was the leader of the discussions, was talking about committing a crime, and he was the leader of the discussions, and he was the leader of that desire. And so that shows that by January, when the government offered these weapons, it's something that he himself wanted to do. And that's critical evidence. I'm not sure that, you know, motive, even though it's been highly contested here, was of such great import here because after Judge Pepper determined that the evidence was inadmissible to show motive, she proceeded to determine that the evidence was relevant to counter the claim of entrapment. She acknowledged that in some instances this evidence could be relevant, but what's so critical here is to see that over 50 times, she ruled over 50 times that a recorded statement was just flatly not relevant, even as to entrapment. We've cited those in the brief saying that they were not probative, irrelevant or not relevant, also as to entrapment. And so that's a clear legal error to fail to recognize the relevance of this, particularly again, given that at trial, Hamza is going to argue that Mike and Steve were leading this charge or that he only wanted a handgun. And so a recorded statement where the jury can hear his enthusiasm, his leadership and desire, that is plainly relevant under under this court's decisions. And so go ahead. I kind of like to go on to your positional predetermination argument because you argued that you should be permitted to introduce evidence that Hamza could have committed the crime by purchasing conversion kits online. But are you then arguing that positional predisposition is merely the ability to commit a crime, regardless of whether the defendant was aware of that ability? And if so, if you are, wouldn't that mean that nearly everyone in this country would have the positional predisposition to purchase illegal drugs or child pornography? Because access, you know, is so easily found online. I really have some trouble with that argument of yours. Well, Your Honor, I think the safeguard in the argument is that predisposition also also requires the defendant's own mental desire and predisposition. So predisposition is not only a matter of him being ready and willing, but that willingness is a critical safeguard. The most recent en banc decision by this court is, of course, Mayfield. And the legal standard announced there is that the question is whether the defendant was ready and willing, even if he had not yet found the means. And so the fact that the district court is going to allow Hamza to introduce evidence that machine guns were rare and expensive. Means that the government has to be able to show that actually he was ready and willing and could have found the means so that that distinguishes him from a case in which the criminal defendant. Look, you know, Judge Pepper said that the government hadn't identified a single item of evidence indicating that he wanted component parts or converter kits, much less that he tried to obtain them. Your Honor, I think Judge Pepper took a very, Judge Pepper expanded and extended Hollingsworth beyond even Hollingsworth and certainly beyond what Mayfield has required. Mayfield and subsequent cases like this court's decision in U.S. versus Blitch. I think Blitch is a really important example where Blitch involved a defendant who was caught in a drug stash house, staying 10 to 15 kilograms of cocaine. And there was no requirement that the government show the defendant had another way to find 10 or 15 kilograms of cocaine. It's enough that the defendant could have found some other stash house, perhaps of men, much less drugs or a different quality or different purity. Because, again, the heart of entrapment is trying to distinguish between somebody who's ready and willing, even if they hadn't found the means, as opposed to somebody that the government has really overborne. And that's why it's important to show that Hamza, you know, Hamza is somebody who even back in the fall was looking for a way to get a machine gun. That's why the evidence of him to go into the Middle East is important. And now if they're going to show that he couldn't have gotten this particular machine gun on his own, the fact that he could get machine guns shows that that he was on his way to committing this crime. And it's it was not entrapment for the government to stop that. Well, I have to tell you, it seems to me that the availability of conversion kits is irrelevant to me, absent any evidence that he was even aware of that option. And none of the conversations indicate such an awareness. How in the world can you admit evidence based on a theory that's completely divorced from the conduct alleged and the theory of the case? Um, well, all right. I have one other question as far as the entrapment, the, he seemed to have disengaged his original intent and has been talking about, well, he just think it'd be nice to have a machine gun, sort of. And that was seeing what it had descended to. In fact, one of the person on your side, I don't remember his name, but he was trying to say, you really don't want to do this. And I think that's one of your, I think, defenses about entrapment where somebody was actually trying to talk him out of this original motive. And I, all of the original motive is so, it's not, maybe to me, it sounds hypothetical. It's just some guy daydreaming about slaughtering a bunch of people. When he finally got around to getting the machine gun, it looked like possession, he had it, and maybe ultimately this case would end in somebody pleading guilty to possession and be done with it, but I can't project that. But it just seems to me that this has, the extreme statements that he was making initially seemed to him, based on what we have, which is not a whole lot, dissipated. He wasn't any more interested in that, but he was still willing to have a machine gun as opposed to a pistol. I guess you're saying he's not going to get away with saying he just wanted a pistol. Right. If this case did not involve an entrapment defense, the government would not be trying to put in his statements from the fall of 2015, because as you say, it will be a simple possession charge. But because Pepper is allowing the jury to hear entrapment, it's important for the government to show that he had the desire for this sort of weapon long before he was offered it. And to the question of his desire, I would point the court to page 285 of the appendix. This is just two days before he purchases machine guns. So if you're asking what was he wanting to do just before he obtained the machine guns, at the bottom of 285, he says, listen, what we need from these people, two machine guns and three silencers and three magazines. So he states very clearly his desire to do this. And yet the court excluded that statement, which could not be more relevant. I see my time is up, Your Honor. I've reserved some time for rebuttal unless you have further questions right now. Thank you, Counsel. Mr. Bugney. Thank you, Your Honor. I have a prepared opening, but I'd like to actually just address Judge Rovner's questions. I think Mr. Krieger is actually at a disadvantage. He wasn't part of the trial team. So there are certain omissions or misstatements that I'm sure are unimportant. Counsel, there hasn't been a trial. Well, there's been a lot of trial prep, Your Honor, a lot of briefing and a lot of argument. We're only a day away from trial. But to look in the record, Your Honor, you first want to go to record 272 and then to 298. And neither place does the government argue about IQ being relevant and these statements coming in under there. If you go to 298, it's actually pages 11 through 17. That's their entire brief as to getting these statements in and countering our objections. As to the bait and switch, Your Honor, Mr. Krieger is a little bit mistaken. We never argued that he wanted a handgun when he went to the meetup. What he wanted was an AR-15 that he'd been shown repeatedly and that he claims, hey, I thought it was going to be like your gun, the same gun that he'd been introduced the whole time. Now, as far as Blitch goes, that case, the argument was not that he's not positionally predisposed. There's no discussion of that there. The positional predisposition is defined by two cases. It's Mayfield and Hollingsworth, and both are rooted precisely on Jacobson. But to back up, Your Honors, and to give you a clear idea of this case, you have to understand the judge's rulings. It's important to highlight the chronology. The government's investigation turned over every aspect of Hamza's life. His emails, his phone calls, his text messages, internet search, all of his banking records are subpoenaed. They interview his family, his friends. They even interview the doctor who delivered him. All the effort is put in there, and there's not a shred of evidence that Hamza has any interest in firearms, let alone illegal firearms or even terrorist organizations, in August 2015. And I stress August 2015 because that's the important date. That's precisely when Steve approaches Hamza. That's when Steve becomes an FBI informant. And the government's statements, the statements that they want to bring into evidence don't take place until October 2015, a full two months later. There's one recorded statement at the end of September, but the ones that they want into evidence are all two months later, right? At a time when the informants decided what they were going to record and when they were going to record. The government wants to use those recordings to show that Hamza had an interest in illegal firearms, that he was predisposed. And Judge Pepper, now whether they want to call it motive or predisposition, it's the same thing. What is his interest in firearms? And the district court identified that. Her opinion is crystal clear on that. This goes to predisposition. And she was very careful to the extent that the statement spoke to an interest in machine guns, they were allowed to present it. To the extent that it was superfluous, inflammatory statements, they were cut. This was not going to be a trial consumed by Middle Eastern politics, generational feelings towards other ethnic groups, or Hamza's fantasies, as Judge Mannion had said, encouraged by the informants, or talk of jihad or suicide attacks. This trial was going to be governed by the jury instructions and was going to be governed by Mayfield. To get this case to trial, and this was a big case, the district court did exactly what we want from a trial court. She took in all the arguments, she dissected the transcripts, taking out the portions that she thought were unfair, where there was a risk of unfair prejudice, but she acknowledged the parts that the government needed. And she followed 403's commands. It's hard to look at her orders and not say that we want anything more from a district court judge. They're thorough, ordering on comprehensive. I mean, you don't often get a 51-page order, and then a 39-page order from the district court ruling on all these statements. Not only that, judges judge. They move cases to trial, making calls, balls, and strikes that allow the case to be tried. And so long as the calls are reasonable, they stand. That's why we want to move this case towards trial. And the government wants to escape that process. They took an interlocutory appeal and they say, well, it's very rare that we do this. And it should be rare because it's a crushing task that Judge Pepper endured. And the government wants to throw up its arms and have you guys say, look, this is just too much. They want every statement admitted. Every statement, yet they only present 15 to you. That's only parts of 15. And they only brief 13 of those. And below it never defended these transcripts. That's the great error here, is that if you look at R298, pages 11 through 17, that's their entire argument about why the statement should come in. There is no IQ. They do say motive. And they do talk about how Hans is such a bad guy. And I believe Judge Pepper acknowledges that where they say, hey, we want to show that he's dead set on homicide. He's a terrible person and this is how bad he is. But that's 404 evidence. And the judge was quick to acknowledge this isn't what we bring it in for. This is going to be a decision that we're going to focus on what are the elements and what does the government need to allow them to have a second bite at the apple, to have never briefed all of these issues, to never brief these statements that they don't even mention here. And just say en masse, just bring it in, just disrecord it, go for it. That would be a slap in the face to Judge Pepper. Sorry, Judge Rovner, do you have a question? I have a lot of questions. I'm here, Judge. In addition to, let me think, in addition to his statements to acquiring machine guns and a silencer, aren't his statements relating to his intent to use those items for violent ends relevant in that it would show his intent to commit the crime for reasons independent of any government agent suggestions? How much of that evidence was allowed? A fair amount. That's another thing that the government doesn't really acknowledge is that they're getting in a lot of evidence. And we feel that there is a risk that Hansa will not get a fair trial because of so much of the evidence that's brought in. But when it comes to his intent to do anything with these machine guns, Mayfield's very clear. It's the crime charge. That's why Judge Pepper's order was as focused as it was. What's the crime charge? It wasn't that he was going to go overseas and commit some terrorism. That was just bravado. I believe Judge Mayfield said fantasies. As far as the relevance, he goes, when it did speak to a desire for machine guns, Judge Pepper allowed it. You can go through the record and see Disc 22, which is an early October or late October discussion on page 153 of the appendix. They're getting that in. Page 155, 156. They're getting that in. They're even getting in parts where Judge Pepper was very careful. Some parts couldn't be undone, where he would talk about his disgust for people of Jewish heritage. It's hard to take that out. But you can look at what she did on, I believe it's the November 6th discussion. He talks about it using a handgun and then taking the weapons from the soldiers. She's getting that in. But as far as what he wanted to do with the Jewish soldiers, that's coming out. Because that part showed an interest in a firearm that is predisposition. And that's the correct call you make, because the judge has to make this kind of fine dicing. The government can't say that that's a per se error. There's no per se rules in the rules of evidence. Nor can the government say that she was totally off base on what the prejudicial impact would be. She made these calls, and these calls are reasonable. But Judge Roman, you said questions. Well, I also was, let me think, I was wondering, forgive me, the government argued that recordings should be admissible rather than just the testimony from witnesses. If the evidence as to what was said is relevant, would there be any legitimate reason to exclude the recordings and allow only witness testimony? Well, so no, I think the witness testimony would be the best evidence of what it was said. As far as, I don't really appreciate that the government's argument or Judge Pepper's ruling is that nobody can speak about what was said. You know, they were meeting every day with Mr. Hamza. They both had, both informants had jobs at the same restaurant. So there's going to be conversations that weren't captured on the audio. But whether it's trial testimony, live testimony from the stand, or it's the recordings, 403 still applies. You can't escape 403. At some point, we would object and say, Judge, you know, this is the fourth time we've heard this, you know, about this conversation. Or this is, you know, this is irrelevant. And the judge might have a sidebar and then, you know, sustain or overrule. And those are the calls that the judge is going to make. Now, am I right that by January of 2016, let's see, the statements started to be recorded in October 2015, until early December 2015. And, but by January 2016, he was no longer interested in traveling to the Middle East. And now he's focusing on some plan to attack the Masonic Center. And then he abandons that within a month. You're right about it. I mean, I guess it would have been a better question for the government, you know. How does that show that his interest was long and sincerely held? And not just as Judge Mannion says, you know, these fantasies. Those are all great arguments. And those are exactly what we're going to be making to the jury. And there's a reason that our client's out on bond. And there's a reason we're presenting the entrapment defense. It's because of that. But Your Honor, I just highlight two facts within the scenario you presented. One, the recording stopped on December 14th. They don't resume until 35 days later. And they resume, and we're told, hey, the last couple days, despite meeting with Hamza every day, and there never being a mention of the Masons, and all of these recorded conversations, and thousands of pages of reports, the Masons suddenly come up. And that, unfortunately, was not recorded, nor was the day prior. So all we have is Hamza talking about the Masons. And the statements are that Mike had showed him these videos. Those statements are actually recorded. And they're said to Steve, who's also recording at the time. And Hamza, within four days, or five days, has abandoned all of those plans as mere bravado. And he leaves and says, guys, we can't do this. We can't do this, despite Mike and Steve pressuring him continually in the car, saying, look, you can't trust in a mom who used to be a Christian. You can't do it. We can't abandon this. And he says, let me out of this. Let me out of this. And he doesn't want any part of it. So, Your Honors, I would just have two more small points that I felt I really wish I would have brought out in the briefing. But 14,000 words is the cap. As to the motive evidence, Judge Rovner, you're precisely right. Fuller and Schmidt, those are both constructive possession cases. When everybody holds up their hand and says, it's not my gun, you get in the motive evidence. And Ford v. Wilson, which is really the quote that they keep on using, that it's always relevant, that was a murder case. And it's actually not even a quote from this court. It's a parenthetical within this court's opinion at Ford v. Wilson. When it comes to what Judge Pepper did here, this court can't embrace the government's desire or now their argument that there's going to be this en masse, just order it all in. As trials progress, as the court makes these decisions, everyone has to have an idea of where things go. And statements that weren't relevant before trial, they can be relevant because the testimony changes. That's for Judge Pepper to make the decision. And this court is poorly equipped. I mean, you can see it even right now. How many facts Judge Pepper had to be immersed in? And that's part of it with the government's statement when they say, she wasn't really that familiar with this case. Judge Pepper knew this case. We filed six pretrial motions to dismiss. And the government's right. Part of our argument was that he shouldn't be held accountable for Steve's gun because it's a taxing statute. And there was no taxable event when he takes it over. She had to know all these facts. She ruled on bond twice. Twice, she had huge bond motions. I mean, we put it over 700 pages of pleadings we put in there. She had to also finally rule on the jury instructions. She had to rule on our discovery. And she also had all of the exposure to the government's SEPA disclosures. The SEPA disclosures we had no idea about. They got ex parte meetings with the judge to say that she didn't know this case intimately. It's an insult. She knew this case better than some of the lawyers. She understood all of the arguments. She went through all of the transcripts. She made the decisions that we call upon her to make. So your Honor, I'm going to interrupt you just a minute. We got a lot of time. I'm looking strictly at the possession issue. Is this the machine gun that he was, I'll say, caught with as he approached his car? That machine gun, I assume, was some kind of a machine gun and that he did possess it. I think that's what, I guess he's going to try to frame an entrapment around that since it was the government's idea or whatever came up with the machine gun. But is this the possession that occurred that he did actually have the machine gun in his hands when he approached his car and was arrested? That's right, Your Honor. We've never denied that he has custody and control of both weapons that he's taking the whole time. So nobody's ever denied that. We've always fully embraced that. There's never been a time, nor have we ever argued that he really wanted in the car to get a pistol. Early on, many of the conversations were about pistols. But we have fully embraced, always said, Hamza has the bag. The video is very clear that Hamza is carrying the bag. So we've never denied this. The idea the government needs to backfill or use motive for an undisputed point just shows why the balancing. We look at what's the probative value and what's the risk of unfair prejudice. There's a mountain of unfair prejudice. Sorry, Your Honor. Thank you. Thank you, Your Honor. We just asked that the court- Thank you very much, Mr. Bugney. And thank you, Mr. Krieger. Your time has expired. The case will be taken under advisement. The court will take a 10-minute recess before calling the next case.